# Richmond

## THOMAS A. BAIN, III v. NELSON S. PHILLIPS, JR.

October 8, 1976.

Record No. 751031.

Present, All the Justices.

*William B. Spong, Jr. (Joseph B. Benedetti; Cooper, Spong, Davis, Kilgore, Parker, Leon & Fennell; Minor, Saunders & Benedetti*, on briefs), for plaintiff in error.

*Thomas S. Word, Jr. (Willard I. Walker; William L. Matson; McGuire, Woods & Battle*, on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

In this malicious prosecution action stemming from a layman's alleged wrongful criminal prosecution of another, we deal with the subject of probable cause for initiating the criminal proceedings.

Appellee Nelson S. Phillips, Jr., the plaintiff below, sued appellant Thomas A. Bain, III, and John F. Batte, Jr. and R. Bolling Batte, the defendants below, for compensatory and punitive damages alleging Bain wrongfully initiated criminal prosecutions in Amelia and Louisa counties charging Phillips with violations of the so-called fictitious name statutes, note 2 *infra*. During the jury trial and after plaintiff's evidence had been presented, the trial court sustained the respective motions to strike of the Battes.[1] Thereafter the jury awarded Phillips $10,000 compensatory damages and $25,000 punitive damages. On May 7, 1975, the trial court entered judgment on the verdict after remitting $15,000 of the punitive damage award. We granted Bain a writ of error and Phillips filed cross-error, complaining of the remittitur.

---

[1] The summary judgment entered in the Battes' favor has become final and they are not parties to this appeal.

The principal question is whether the trial court erred in failing to submit to the jury the broad issue of Bain's probable cause, or lack of same, for instituting the criminal proceedings. The court below decided Phillips established as a matter of law that Bain lacked probable cause in securing criminal warrants against Phillips and submitted to the jury, along with the damage question, the issues of malice and whether Bain had established his affirmative defense of advice of counsel. Bain claims this was error and argues the jury should have been permitted to consider, under proper instructions and in addition to the defense of advice of counsel, the issue of probable cause. We disagree and affirm.

As we recite the facts, it will be assumed, in accordance with the jury's finding, that Bain did not prosecute Phillips in reliance on the advice of counsel. But under the familiar rules used to determine whether a question is one of fact for the jury or one of law for the court, we will consider the controlling issue in this case by viewing the evidence relating to probable cause in the light most favorable to Bain.

In 1973, Bain was employed as a salesman by a Richmond real estate company, J. F. Batte & Sons, and was "part owner" and president of NDH Company, a Virginia corporation engaged in the construction of modular homes on property NDH owned in Amelia and Louisa Counties. At that time, Phillips, who was also in the construction business, and Bain, casual social acquaintances for ten years but never involved in a business relationship together, orally agreed that Phillips would perform work for Bain in the erection of several modular homes in the foregoing counties. Phillips was operating a sole proprietorship doing business as "Nelson S. Phillips, Jr., t/a Phillips Construction Company." Bain was then unaware of the details of Phillips' business form.

Immediately prior to reaching the agreement with Phillips, Bain while investigating Phillips' performance on other construction jobs learned that "a year or two before" Phillips had worked on the construction of a veterinary hospital and that the owners were then "dealing" with Phillips, Phillips' father, Phillips' uncle, "and others"; Bain testified that he understood Phillips' business was "a family affair with others involved." Bain also learned that in the past Phillips "might [have been]

selling stock", presumably in a corporation in which Phillips had an interest. Bain admitted, however, that he previously stated in discovery depositions he had no reason to believe that Phillips had any partners or that he was transacting business as a partnership.

In June of 1973, Bain and Phillips had a disagreement over the quality of the work done by Phillips Construction Company and the charges therefor made to NDH Company. In an unsuccessful effort to settle the dispute, Bain and Phillips subsequently met in the office of Phillips' attorney. Also present were Phillips' father, who "had very little to say" during the four-hour conference, and John F. Batte, Jr., an attorney and principal in J. F. Batte & Sons. Bain sought Batte's assistance in resolving the dispute because Bain regarded Batte an experienced builder, developer, and attorney.

Because of the dispute, Phillips discontinued work on the modular homes in Amelia and Louisa counties. In the Fall of 1973 Phillips filed memoranda for mechanic's liens in both counties against the property involved. Thereafter in March 1974, a bill in chancery to enforce the Louisa mechanic's lien was filed in the Circuit Court of Louisa County styled "Nelson S. Phillips, Jr., t/a Phillips Construction Company v. NDH Company." In the first paragraph of the bill, Phillips alleged that he was "a general contractor, with his principal office at 1403 Blue Jay Lane, Richmond, Virginia 23229", an allegation admitted in the answer subsequently filed by Bain for NDH Company. Phillips and his family resided at the foregoing address.

Upon being served with the suit papers as registered agent for NDH Company, Bain sought the advice of R. Bolling Batte, a member of the law firm of Batte, Batte & Graham whose offices were located in the Batte Building in the City of Richmond. Other members of the law firm were John F. Batte, Jr. and Oakley J. Graham, Jr. Also located in the same building, but separately from the law offices, was the realty office of J. F. Batte & Sons, Bain's employer. The Batte law firm had not represented NDH Company at any prior time.

Bolling Batte, who devoted his full time to the practice of law, told Bain he would draft an answer to the bill for Bain to sign and file but that he would not participate in the lawsuit or

represent NDH Company. The answer was prepared and typed in Batte's office, executed by Bain as president of NDH Company and filed by him *"pro se."* Batte submitted a bill to NDH Company for $50 for "consultation and preparation of pleadings" in the mechanic's lien suit, which was promptly paid with an NDH Company check signed by Bain.

During the period after Bain first contacted Bolling Batte and before the criminal warrants in issue were secured, Bain, who had attended law school for one year, discussed "the case" on several occasions with Batte in Batte's office. During one of these discussions, Batte called Bain's attention to the Virginia assumed or fictitious name statutes,[2] with which Bain was unfamiliar, and "pointed out the possibility" that Phillips "might" be in violation of them. Batte read Bain the code section, but did not inform him of the following portion of the annotation to § 59.1-69:

> "**Name not within chapter.** — Where the designation under which a business is being conducted consists of the surname of the proprietor or proprietors, with the addition of the words 'and Company' or '& Co.', preceded by a word descriptive of the nature of the business, the name is not within this

---

[2] The provisions of the assumed name or fictitious name statutes in Title 59.1, Chapter 5 of the Code of Virginia of 1950, as amended, pertinent to this case follow:

"**§ 59.1-69. Certificate required of person or corporation transacting business under assumed name.** — No person or corporation shall conduct or transact business in this State under any assumed or fictitious name unless such person or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the names of each and every person or corporation owning the same, with their respective post office and residence addresses (and, when the corporation is a foreign corporation, the date of the certificate of authority to do business in this State issued to it by the State Corporation Commission), and file the same in the office of the clerk of the court in which deeds are recorded in the county or corporation wherein the business is to be conducted."

"**§ 59.1-75. Penalty for violation.** — Any person violating any of the provisions of this chapter shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding one thousand dollars, or by imprisonment for not more than one year, or both."

"**§ 59.1-76. Effect of failure to file certificate on right of action.** — The failure of any person or corporation to comply with the provisions of this chapter shall not prevent a recovery by or against such person or corporation, in any of the courts in this State on any cause of action heretofore or hereafter arising, but no action shall be maintained in any of the courts in this State by any such person, corporation or his or its assignee or successor in title unless and until the certificate required by this chapter has been filed."

chapter. Tate v. Atlanta Oak Flooring Co., 179 Va. 365, 18 S.E.2d 903 (1942), holding that this section did not apply where trade name was 'A. E. Tate Lumber Company' and A. E. Tate was the sole owner. See also Matthews v. Barfield, 179 Va. 691, 20 S.E.2d 497 (1942)." [3]

During another discussion with Bain, Batte in Bain's presence made a telephone call to the Louisa County Clerk's Office and learned that Phillips had not filed the certificate provided for by Code § 59.1-69. Bain testified that Batte then "suggested that I secure [criminal] warrants in both Amelia and Louisa" against Phillips. Bain further testified that Batte instructed Bain "to be sure and let him know when the case on the warrants came to be heard, that he would call [the Commonwealth's Attorney of Louisa County] who's a personal friend of his and alert him to [Code § 59.1-69] since it was generally unknown and alert him to be aware of it, so that he could prosecute the case when it came to trial."

Batte denied making the foregoing statements. He testified categorically that he never advised Bain to initiate criminal proceedings against Phillips but that he merely suggested to Bain that he make Phillips' failure to file the certificate an issue in the mechanic's lien suit under the provisions of Code § 59.1-76, note 2 *supra.*

On May 13, 1974, Bain attended the docket call in Louisa Circuit Court, accompanied by Graham, in connection with the mechanic's lien suit and while there Graham determined that no fictitious name certificate had yet been filed by Phillips. Bain then secured the issuance of an arrest warrant in Louisa County General District Court against Phillips charging violation of Code § 59.1-69. Later that same day Bain ascertained that Phillips had not filed a certificate in the Amelia Clerk's Office and a similar warrant was issued by the Amelia County General District Court at Bain's request against Phillips charging the same violation in Amelia County. Bain testified that his purpose in securing the warrants was (1) to assure that one who had violated the criminal laws in two counties was punished and (2) to ascertain "the people that we were dealing with" as Phillips

---

[3] We held in *Matthews,* relying on *Tate,* that A. F. Matthews trading as Matthews Mule Company was not required to file a § 59.1-69 certificate.

Construction Company. Bain denied that his action in securing the warrants was related to the fact he had been sued by Phillips.

Subsequent to the issuance of the warrants, attempts to serve them upon Phillips at his home in Henrico County were initially unsuccessful because he was in Wheeling, West Virginia working for another contractor as a project manager. Upon learning of the outstanding warrants, Phillips returned to Virginia, was arrested, bonded and released on his own recognizance in each case.

After the issuance of the warrants and before their return dates, one of Phillips' attorneys contacted Robert Dolbeare, a Richmond attorney who then represented Bain in the mechanic's lien suit, and demanded that Bain be instructed to dismiss the criminal warrants on the authority of *Tate* and *Matthews*. Dolbeare passed counsel's message to Bain who then discussed the demand with John Batte who told Bain to "take your lawyer's advice". Bain then told Bolling Batte of the demand by Phillips' attorney and, according to Bain, Bolling Batte said "leave the warrants in force and take no further action."

Bain undertook to prosecute the cases *pro se* at the trials in each county. The Amelia warrant was dismissed on June 25, 1974 and the Louisa warrant was dismissed two days later, both apparently on the basis of the *Tate* and *Matthews* decisions. This suit ensued in August 1974.

Actions for malicious prosecution are not generally favored in Virginia and they have been circumscribed by limitations more stringent than those applied to most other tort actions. *Niese* v. *Klos*, 216 Va. 701, 703, 222 S.E.2d 798, 800 (1976). But "when the requirements [limiting such actions] have been met and the proper elements to support the action have been presented, the action will be readily upheld." *Wiggs* v. *Farmer*, 205 Va. 149, 151, 135 S.E.2d 829, 831 (1964).

The elements of the cause of action, upon which the plaintiff has the burden of proof, are "(1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; (2) that it was instituted, or procured by the cooperation of the defendant; (3) that it was without probable cause; and (4) that it was malicious." *Niese, supra.* It is undisputed that Phillips established elements (1) and

(2) as a matter of law. As to element (3), the trial court refused Bain's instructions dealing with the broad issue of probable cause and, as we have stated, submitted to the jury the issues of malice, damages and advice of counsel.

Probable cause as it relates to malicious prosecution actions is defined as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Virginia Ry. and Power Co.* v. *Klaff,* 123 Va. 260, 266, 96 S.E. 244, 246 (1918). *Accord, Gaut* v. *Pyles,* 212 Va. 39, 41, 181 S.E.2d 645, 647 (1971); *Giant of Virginia* v. *Pigg,* 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967). The test of probable cause is to be applied as of the time when the action complained of was taken. *Forbes & Allers* v. *Hagman,* 75 Va. 168, 180 (1881).

■ The defense of advice of counsel must be placed in proper perspective. A defendant who acts in good faith upon the advice of reputable counsel, after a full disclosure of the facts, has a complete defense to an action for malicious prosecution, *Spitzer* v. *Clatterbuck,* 202 Va. 1001, 1004, 121 S.E.2d 466, 468 (1961), it being considered he has probable cause although the advice he received may be wrong. *American Ry. Express Co.* v. *Stephens,* 148 Va. 1, 16, 138 S.E. 496, 501 (1927). *But see Munger* v. *Cox,* 146 Va. 574, 587, 592, 131 S.E. 841, 845, 132 S.E. 687, 688 (1926). *See generally Burks Pleading and Practice,* § 150 at 261 (4th ed. 1952).

Bain argues, first, that a jury question as to probable cause was created because the evidence warranted a finding Bain reasonably believed "others" were involved with Phillips in the ownership of Phillips Construction Company, and "thus, if Bain reasonably believed this, he was correct in believing that the law had been broken." This is a mistake of fact argument. "A private prosecutor's mistaken belief that the accused is guilty of the offense charged against him may be due to a mistake of fact, that is, a mistake as to what the accused has done or left undone." *Restatement of Torts* § 662, *Comment d.,* at 405 (1938). Second, relying on *Restatement (Second) of Torts* § 662 (Tent. Draft No. 13, 1967),[4] Bain contends the evidence justified a jury

---

[4] "One who initiates or continues criminal proceedings against another has probable cause for doing so if he correctly or reasonably believes that

"(a) the person accused has acted or failed to act in a particular manner, and

finding that Bain's mistaken belief that Phillips violated the statute was reasonable, even though legally erroneous, "in light of facts known to [Bain] and from what Bolling Batte told him." This is a mistake of law argument. The private prosecutor's erroneous belief the accused is guilty of the offense charged "may be due to a mistake of law, that is, a mistake in believing that the actual or supposed acts or omissions of the accused constitute the offense charged against him." *Restatement of Torts* § 662, *Comment d., supra.*

Responding to Bain's mistake of fact contention, Phillips argues the evidence, taken in the light most favorable to Bain, fails to establish a reasonable affirmative belief on Bain's part when he swore out the warrants that Phillips was not acting as a sole proprietor. In rebuttal to Bain's mistake of law argument, Phillips, relying on *Restatement of Torts* § 662 (1938),[5] urges that if a defendant's mistaken belief is one of law rather than fact, such mistaken belief constitutes probable cause only if he relied on advice of counsel.

■ Upon the mistake of fact phase of the case, the parties differ in their interpretation of the evidence; we believe Phillips has correctly analyzed it. Bain relies on the evidence that he had been informed prior to the Bain-Phillips agreement that Phillips' father, Phillips' uncle, and "others" were involved "a year or two before" with Phillips in construction of a veterinary hospital; that he believed Phillips' business was "a family affair with others involved"; that he was told Phillips "might be selling

---

"(b) such acts or omissions constitute the offense charged against the accused, and

"(c) *he is sufficiently informed as to the law* and the facts *to justify him in initiating or continuing* the prosecution." (emphasis supplied)

See *Gaut, supra*, 212 Va. at 42, 181 S.E.2d at 647; *Clinchfield Coal Corp.* v. *Redd*, 123 Va. 420, 440, 96 S.E.2d 836, 842 (1918); *Prosser, The Law of Torts,* § 119 at 843 (4th ed. 1971); Annot. 65 A.L.R. 225, 244 (1930); Note, *Torts-Malicious Prosecution-Probable Cause-Error of Law*, 25 Tenn. L. Rev. 316, 320 (1958).

[5] "One who initiates criminal proceedings against another has probable cause for so doing if he

"(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and

"(b)

(i) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or

(ii) *mistakenly so believes in reliance on the advice of counsel under the conditions stated in* § *666* [effect of advice of counsel]." (emphasis added)

stock", perhaps in Phillips' own business venture; and that Phillips' father attended the lengthy settlement conference, his interest in the controversy never being revealed to Bain.

But applying the settled test of probable cause, *Klaff, supra,* Bain's knowledge of the foregoing facts was insufficient as a matter of law to excite the belief in a reasonable mind, acting on such facts and circumstances, that "others" owned Phillips Construction Company with Phillips so as to make Phillips guilty of a violation of the fictitious name statute. Indeed, it was unreasonable for Bain to believe that Phillips was not acting as a sole proprietor. Bain proceeded on vague, indefinite information. He reached an erroneous conclusion of fact without attempting to verify any of the conjecture, although the opportunity was readily available to him during his discussions with Phillips to inquire of Phillips the nature of his business structure. Moreover, as Phillips argues, Bain never testified to an affirmative belief that Phillips was acting other than as a sole proprietor. Actually, the evidence shows Bain entertained a contrary belief because in his answer to the mechanic's lien suit, he admitted the allegation that Phillips, individually, was a general contractor transacting business from his home, which was tantamount to an assertion Phillips was a sole proprietor. Accordingly, we conclude the trial court properly ruled there was no issue for the jury insofar as mistake of the foregoing facts bore upon probable cause.

Upon the mistake of law branch of the case the parties disagree on the legal principle which should control. It is unnecessary for us to decide today whether we embrace the former *Restatement* rule, note 5 *supra,* or the rule of Tentative Draft No. 13, note 4 *supra,* which reversed the former position of the American Law Institute set forth in § 662 as it related to a mistake of law. We will agree with Bain and assume without deciding that a lay prosecutor's reasonable mistake of law is sufficient for probable cause. Nonetheless, we are of opinion there was no issue for the jury on this aspect of this case apart from the advice of counsel question.

Assuming, as we must in light of the jury's finding (which was supported by abundant evidence), that Bain acted independently without advice of counsel, we conclude that Bain's conduct under his alternative theory was also unreasonable as a matter of law. Under this theory Bain contends his reasonable mistake was his

erroneous belief the statute had been violated even though he knew the true facts that Phillips was the sole proprietor of Phillips Construction Company.

In attempting to establish a mistake of law-probable cause issue separate and apart from the advice of counsel question, Bain argues this mistake was justified as the result of his various contacts with Bolling Batte and Graham; that the conduct of both attorneys would tend to confirm in the mind of a reasonable layman, who did not have the benefit of the annotation, his belief that by trading as "Phillips Construction Company", Phillips was transacting business under an "assumed or fictitious name" and was required by the statute to file a certificate. He points to the evidence which shows that apparently based only on an examination of the designation shown in the bill of complaint in the mechanic's lien suit of "Nelson S. Phillips, Jr., t/a Phillips Construction Company", Batte directed Bain's attention to the statutes in question, opined Phillips "might" be in violation thereof, verified by telephone that no § 59.1-69 certificate had been filed in the Louisa Clerk's Office, suggested criminal warrants be secured, and promised to remind the Louisa Commonwealth's Attorney before trial of the applicable law. Moreover, he argues that on the day the warrants were secured, Graham verified for Bain that the certificate had not been filed in Louisa. From these facts, which demonstrated, he contends, the attorneys' apparent belief a violation of law had taken place, reasonable men could differ, apart from any advice of counsel issue, whether Bain was reasonable in initiating the prosecutions. We reject this argument.

A close examination of this record reveals that all of the foregoing evidence which Bain now argues relates to the broad probable cause question, was proffered to support and was directly related to the narrow issue of advice of counsel. It was part and parcel of the issue raised as an affirmative defense, and none other. While, as we have said, one acting on advice of counsel is considered to have probable cause, nevertheless evidence offered to support the narrow advice of counsel issue does not *ipso facto* create a broad probable cause question; this is such a case. When we excise the foregoing facts which dealt exclusively with the one narrow issue, Bain is left only with his own lay knowledge of the statutory provision, exclusive of the

annotation appended thereto, on which to form a conclusion of law. Such scant knowledge under these circumstances is insufficient for a layman to entertain a reasonable belief that he has enough information about the law of the subject to justify initiating a criminal prosecution.

It is for these reasons we decide the trial court was correct in refusing to submit the broad issue of probable cause to the jury.

■ We also reject Bain's further contention that Phillips failed as a matter of law to prove malice, either legal malice, *Pigg, supra,* 207 Va. at 685, 152 S.E.2d at 276, to support element (4) of the cause of action, *supra,* or actual malice, 207 Va. at 686, 152 S.E.2d at 277, to support a punitive damage award. It is sufficient to say that the finding of the jury in each instance was fully sustained by the evidence. Moreover, we dismiss out of hand, for the reasons previously stated, Bain's additional contention that the evidence established as a matter of law probable cause for issuance of the warrants.

■ This brings us to Phillips' contention, with which we do not agree, that the court below erred in ordering remittitur. We note that during argument of the motion to set aside the verdict, counsel for Phillips invited the trial judge to "put the plaintiff on terms, so that the punitive damages do not exceed the compensatory", which was done. But even if we disregard the foregoing circumstance, we find no abuse of discretion in the action of the trial court, given the trial judge's duty to supervise the verdicts of juries to prevent miscarriages of justice. *See Bassett Furniture Industries, Inc. v. McReynolds,* 216 Va. 897, 911, 224 S.E.2d 323, 331-32 (1976).

The judgment in all respects is therefore

*Affirmed.*